--------o-o-o--------

Thomas Burrel and John Wilson, in behalf of themselves and others, *vs.* The Associate Reformed Church of the town of Seneca.

The land on which a church edifice was erected was conveyed by two deeds, in one of which the grantees named were five persons, described as " Trustees of the Associate Reformed Church of the town of Seneca," &c. This deed conveyed one half of an acre of land in these terms: " Witnesseth that the said party of the first part, for the support, encouragement and preferment of religion, hath given, granted, aliened and confirmed, and by these presents doth give, grant, alien, enfeoff and confirm unto the said party of the second part and their successors forever, in trust to and for the uses, interests and purposes of the religious society denominated the Associate Reformed Church of the town of Seneca, &c., either for the

Burrel *v.* Associate Reformed Church.

express purpose of building a church on said lot, or for a burying place." The other deed was in the same words, except the description of the land and the terms of the trust, which was in these words: "In trust for the religious society denominated the Associate Reformed Church of the town of Seneca." By a third deed, two acres of land were conveyed to the said trustees, as such, without any declaration of trust, except that the land was conveyed "for a parsonage, and nothing else."

*Held* that the trustees of the religious society mentioned took the property so conveyed to them by the several deeds, for the use of the society according to the law and principles which govern the organization of such corporations. That they could not take or hold it in any other character, or upon any other trusts.

That the property thus conveyed belonged to the corporation, which consisted of all the members of the society entitled to vote at the election of trustees, a majority of whom thus controlled the property of the corporation and as a necessary consequence decided the ecclesiastical relations and connections of the society, and the character of the religious views, opinions and doctrines inculcated from its pulpit.

If a religious society thinks proper to separate from the church with which it has previously been connected, and to form a connection with another denomination, the trustees have the power to employ such minister as they think fit, and to exclude from the pulpit a minister appointed by the ecclesiastical judicatory with which the society was previously connected. And a court of equity has no power to control their action in the employment or payment of a minister.

Where the trust declared in a deed to the trustees of a religious society is to and for the uses, interests and purposes of such society, either for the express purpose of building a church on the lot, or for a burying place; the deed not declaring the ecclesiastical connection of the society at the time of its date, nor seeking, professedly, to perpetuate its connection with any ecclesiastical judicatory; and such trustees, by the same title described in the deed, still occupy, possess and use the lot and the church edifice built thereon; the fact that the religious society has separated from the church with which it was previously connected, and formed a connection with another denomination, will not amount to an abuse of, or a departure from, the trust declared in the deed, such as will justify the interference of a court of equity.

APPEAL by the plaintiffs from an order made at a special term, allowing a demurrer to the complaint. The object of the action was to restrain the defendant from diverting its property, mentioned in the complaint, from the purpose for which it was acquired, and is held, and appropriating it to a different purpose. The complaint was as follows:

"The plaintiff, in the above entitled action in behalf of themselves, and such other members of the Associate Reformed Church of the town of Seneca, as adhere to the constitution and standards of the United Presbyterian Church of North America, in all matters relating to doctrine, government, discipline and worship, complain of the defendant therein, and say that prior to the year 1782, there existed in this country two large associated ecclesiastical bodies of protestant christians ; one of them was known as the "Associate Church," and the other as the "Reformed Presbyterian Church." That in the year aforesaid, in the state of Pennsylvania, a union of these two bodies was mutually agreed upon and consummated, and that upon said union the names of the two bodies thus originally composing it were dropped and a new name adopted, viz.: "The Associate Reformed Church of North America." That the body thus organized adopted a platform or basis of union, containing several provisions, among and by which it claimed the full exercise of church discipline and government, without dependence upon any foreign judicatory. That thereupon, and soon after the said union, the Associate Reformed Church adopted a confession of faith, established a form for the government and discipline of the church, for public and private worship, and prescribed the terms upon and directories which any person or persons might be admitted as a member or members of said church, among which were an approbation of the said forms of church government and discipline and directories for worship and subjection to the order and discipline of the said church. That said confession of faith, form of church government and discipline and directories for public and private worship, were declared to be the constitution and standard of the Associate Reformed Church in North America, in all matters relating to doctrine, government, discipline and worship, and for greater convenience in the administration of church authority, were prepared in book form, and as thus constituted and prepared, have ever since remained and continued in full force and effect. That as thus

constituted and organized, the said Associate Reformed Church has been greatly prospered. Its increase has been large and rapid, and its churches are found scattered over the whole country, so that in the year 1858, it contained four synods, twenty-eight presbyteries, two hundred and fifty-three preachers of the gospel, nearly four hundred congregations, fifteen thousand families, over thirty thousand communicants, three theological seminaries, seven missionaries, in the foreign field, and was in its different branches, the owner of very large amounts of property, real and personal, for church purposes. The plaintiffs further say, that by the constitution, standards and forms of church government aforesaid, the government of said Associate Reformed Church, is by several sorts of assemblies, composed of pastors and other elders, which assembled in congregational, classical and synodical. That the government of the church by these several sorts of assemblies is a subordination of the congregational to the classical and of the classical to the synodical. That the judicatures of the said Associate Reformed Church consist of a particular congregation or church, and its session of presbyteries, and particular synods, and a general synod. That a particular congregation or church, consists of its individual visible members, and its session, which is composed of its minister or ministers, and its elders.

The presbytery consists of the ministers within a certain district, each accompanied by a ruling elder, commissioned from the session. The particular synod is immediately superior to the presbytery, and consists of several presbyteries met together for managing the affairs of the churches under their inspection. The general synod consists of delegates from all the particular synods.

The plaintiffs further say, that by the provisions of the form of church government of the said Associate Reformed Church, the session of a particular congregation or church, have power, among other things, to call before them any member of said congregation, and to inquire into the knowl-

edge and spiritual estate of each member, and for that purpose to introduce witnesses, and to suspend, if they think proper, any ·member· of the church from the ordinances thereof, by sentence or edict, and to cast out of the church any member found to be unworthy. That any such, and every member of any such congregation, has the right of appeal from the action of any session, to the presbytery, and so on in succession, from the inferior to the next superior judicatory, to the general synod. That the authority of the presbytery reaches to all things which concern the particular congregations or churches within their bounds which do not belong to sessional or synodical jurisdiction, such as deciding on appeals from church sessions, appointing supplies of preaching, and other ordinances to vacant churches, examining and licensing candidates for the ministry, ordaining, installing, removing, judging ministers, inquiring into the state of the churches under their care, and rectifying any disorders, abuses or other evils therein.

The plaintiffs further say, that it is also therein further provided, that whenever any minister of a particular congregation or church, at his own request, or otherwise, shall be dismissed by presbytery, in order to connect himself with some other denomination, ecclesiastical body, or foreign church judicatory, the pastoral relation between such minister and his congregation is thereby dissolved. That no congregation has power to call, and ordain its pastor, without the consent of the presbytery to which it belongs, and the presbytery has power to prevent the ordination of any minister over a particular congregation within its bounds, without its consent.

The plaintiffs further say, that in the. month of May, 1858, the said Associate Reformed Church, formed a union with another large and influential ecclesiastical body of protestant christians, before then for a long time in existence, known as the Associate Presbyterian Church, and the churches thus united were thenceforth called and are now known as the United Presbyterian Church of North America.

That said United Presbyterian Church on said union resolve that the .supreme court of said church should be a general assembly, but all subordinate church judicatories should be and remain as in the said Associate Reformed Church before said union was consummated, and they have ever since remained, and still do remain constituted as before such union.

The plaintiffs further say, on information and belief, that in the month of July, 1807, sundry persons of the town of Seneca, in the county of Ontario and its vicinity, members of the said Associate Reformed Church, associated themselves together, and were duly organized and incorporated according to law, as a religious society, according to the forms of church government of the said Associate Reformed Church, its constitution and standards of faith and practice, and connected themselves with and became subject to the authority of the said Associate Reformed Church, as a particular congregation, under the corporate name and denomination of the "Associate Reformed Church of the town of Seneca," which is the defendant in this action. That ever since that time, and until some time in the year 1859, as hereinafter mentioned, the said congregation has been connected with said Associate Reformed Church, as a particular congregation or church, subordinate to and owing and yielding to the authority of the superior church judicatory of. the said Associate Reformed Church due subjection and obedience. That until the time last aforesaid, the said congregation has had a session duly elected and a succession of ministers duly ordained and installed over it, according to the forms of church government of said Associate Reformed Church, and no other.

The plaintiffs further say, that in February, 1808, one Caleb Rice, and Mary his wife, of the town of Seneca, county of Ontario, for the support, encouragement and preferment of religion, conveyed by warranty deed to Samual Latta, William Gay, John Rippir, Samuel McIntyre, and James Beattie, trustees of said defendant, one half acre of land,

particularly described in said deed, a copy of which is here-unto annexed, marked A, and forming a part of this, the plaintiffs' complaint, in trust to and for the uses, intents and purposes of the defendant, and for other purposes, in the said deed expressed, which deed is dated February 24, 1808, was duly acknowledged and recorded in the Ontario county clerk's office, June 7, 1809, in liber 13 of deeds, at page 735, and to which and the record thereof, the plaintiffs for greater certainty refer, if need be.

The plaintiffs further say, that on the 24th of February, 1808, one Elihu Cary, and Catherine his wife, of the town and county aforesaid, for and in consideration of the sum of ten dollars, to them in hand paid, conveyed by warranty deed to the same trustees of the defendant, one half acre of land, in the town aforesaid, adjoining the last mentioned piece of land, in trust for the defendant, which deed was duly acknowledged and recorded in the clerk's office of Ontario county, on the 7th day of June, 1809, in liber 13 of deeds, page 734, a copy of which is hereto annexed, marked B, forming a part of this, the plaintiffs' complaint, and to which, and the record thereof aforesaid, the plaintiffs for greater certainty refer, if need be.

The plaintiffs further say, that on or about the 29th day of November, 1856, one Parsafer C. Dutcher and Johannah L. his wife, of Seneca, Ontario county aforesaid, conveyed by warranty deed to the "trustees of the Associate Reformed Church, of the town of Seneca," the defendant, for the consideration of two hundred and twenty-five dollars, two acres of land, for a parsonage, and nothing else, lying in the said town of Seneca, which piece of land is more particularly described in said deed, which was duly acknowledged and recorded in the clerk's office of Ontario county, on the 28th day of November, 1856, in liber — of deeds, at page —, a copy of which deed is hereto annexed, marked C, forming a part of this, the plaintiffs' complaint, and to which, for greater

certainty, and the record thereof, reference may be had, if need be.

The plaintiffs further say, that all the moneys paid for the consideration of the said conveyances were contributed and paid for that purpose by the members of the said church and congregation. That soon after the purchase of the two first above described pieces of land, and in the year 1808, the defendant, by subscription and contributions from the members of the said church and congregation, erected a church edifice, partly situate on both of said pieces of land, for the use of said church and congregation as a place of worship. That in the year 1838, the said building becoming dilapidated and unfit for use, the defendant, by various subscriptions and contributions from members of said church and congregation, and others of the Associate Reformed Church, erected on the same ground a new house of worship for the use of said congregation, at an expense of more than $4000, which house of worship is still used for that purpose, and is the property of the defendant. That in the year 1856, the defendant by means of subscriptions of the members of the said church and congregation, erected a parsonage building on the lot described in the deed thirdly above mentioned and set forth, at an expense of more than $2500, which is still the property of the defendant, and has since its erection been mostly occupied by the pastor of said congregation, in part compensation for his salary.

That the salary of the minister of said church and congregation has always been paid by rent of pews in said church building, subscriptions and contributions of the members of said church and congregation, and occupation of the parsonage ; and that during nearly the whole of the time since the organization of the church, and until the doings hereinafter mentioned, the services of a minister have been enjoyed by said church and congregation, and paid for in the manner above mentioned. That the annual value and income of the

property of the defendant, derived from the sources aforesaid is, and has been for many years past, about $1000.

The plaintiffs further say, that in the year 1856, the pastorate of the said church and congregation then being vacant, the Reverend George W. Patton, then being a minister of, and in full ministerial communion with the Associate Reformed Church aforesaid, was regularly and according to the form of church government of the said Associate Reformed Church, in such case made and provided, ordained and installed as the minister and pastor of the defendant's church and congregation, by the presbytery of Caledonia, that being the presbytery of the said Associate Reformed Church, within whose bounds the said particular congregation of the defendant was contained, and within its appropriate jurisdiction. That said George W. Patton thereupon took upon himself, and entered upon the duties and became, and was the pastor of the congregation aforesaid, and so remained until his said pastorate became and was dissolved as hereinafter stated.

The plaintiffs further say, that in March, 1859, the said George W. Patton, so being the minister of the church and congregation as aforesaid, without the concurrence of his said church and congregation, applied to the said presbytery of Caledonia for a certificate of dismission therefrom, for the purpose of uniting himself with another demomination, to wit: the Rochester City presbytery, a judicatory of the Old School Presbyterian Church, so called, and not in connection with the United Presbyterian Church of North America.

The plaintiffs say, that according to the constitution, standards and form of church government of the said United Presbyterian Church, the granting of said request of dismission, in the absence of any application on the part of the church and congregation aforesaid, uniting with said Patton in his said request, necessarily sundered the pastoral relation between said George W. Patton and said church and congregation, all of which said George W. Patton and said defendant well knew.

The plaintiffs further say, that said application was granted, and that thereupon, said Caledonia presbytery, by virtue of authority vested therein, passed the following resolution:

"Resolved, That the pastoral connection hitherto existing between Mr. Patton and the congregation of Seneca, (the congregation of the defendant meaning,) in consequence of his dismission, at his own request, to connect himself with another body, be and hereby is dissolved."

The plaintiffs further say, that by the acts and proceedings aforesaid, the said Associate Reformed Church of the town of Seneca, became vacant of a pastor, and remained under the care and authority of the said Caledonia presbytery, as before the said ordination over it of the said George W. Patton. That thereupon the said presbytery of Caledonia, as it had a right, and was its duty so to do, appointed and directed the Reverend J. F. Boyd, a minister of the said United Presbyterian Church, to preach to the said church and congregation of the defendant soon after, on a certain day named, and to declare at the same time, that the pastoral relation between the said George W. Patton and the said church and congregation had been and was dissolved, and that said congregation had become vacant. That the defendant thereupon, then and there, by its trustees, forbid and prevented the said J. F. Boyd from the discharge of his duty, in obedience to the directions of the said presbytery, as aforesaid.

The plaintiffs further say, that afterwards, and in the month of December, 1858, the said congregation, at a pretended, unauthorized meeting thereof, irregularly called, by a vote of a majority of the members *then present*, resolved to separate from the said United Presbyterian Church, and to seek a connection with another denomination, to wit: The Rochester City presbytery of the Old School Presbyterian Church, and thereupon, by means of certain persons without authority, assuming to represent the congregation, petitioned the said Rochester City presbytery to take the said church and congregation under its care, and extend its authority over the

said church and congregation; and the said Rochester City presbytery, acting as a judicatory of the Old School Presbyterian Church, did then and there at a meeting thereof, in the fore part of the year 1859, without heeding the relations of said church and congregation with the United Presbyterian Church, and without the consent of the session of said church or of any church judicatory of the said United Presbyterian Church having cognizance thereof, notwithstanding the same was protested against by these plaintiffs and a large portion of the elders of said church, assume to extend over the said church its care and authority, and receive the same into connection with the Old School Presbyterian Church; and the said church and congregation did then and there, notwithstanding the protest aforesaid, and the protest of a large portion of the members of said church and congregation, and without the consent of any superior church judicatory, assume to separate from the said United Presbyterian Church and connect itself with the said Rochester City presbytery of the Old School Presbyterian Church; and the plaintiffs say that from that time hitherto the defendant has continued, and still does continue, the said George W. Patton, as the pastor of the said church and congregation, in defiance of these plaintiffs and others of said congregation who adhere to the United Presbyterian Church, and are prevented by the defendant and its officers from employing a pastor for the said church and congregation, in connection with and according to the form of church government of said United. Presbyterian Church; and the defendant has during all that time perverted the church edifice and parsonage, and appropriated the income, property and funds of the defendant to the support and use of the said George W. Patton, as a pastor of the said church and congregation, in violation of its duty, and having no right thus to appropriate and pervert any of the said income, funds, property and buildings.

· The plaintiffs say, that the said funds, property and income of said defendant consist of the real estate aforesaid, together

with the church edifice and parsonage building erected thereon, and the use of the same, the rents of the pews and subscriptions and donations of the members of the congregation for the support of the minister and other church uses, the amount and annual value of which is about $1000.

The plaintiffs say, that they are and have been for more than ten years last past, members and elders of the said church and congregation, and voters therein, and that they with many others, members of the said church and congregation, adhere to the constitution and standards, government and discipline of the United Presbyterian Church of North America. That John K. McAuley, Jay Dormon, Henry Haslett, John M. Rice, Daniel J. Haynes, Hamilton Rippir, and George Wilkie, are or claim to be trustees of the defendant, and these plaintiffs claim and insist, that the defendant and its property can not be diverted or appropriated to any other purpose or use, except that for which it was created and intended by the grantors, donors and original founders thereof, and that the defendant is bound to appropriate all such, its property and income, to such original purpose, and that it is a violation of such use and purpose, and of the duty of the defendant to apply, appropriate or pervert any of the funds, property or income of the defendant to the support of a church or a minister belonging to any other denomination than that of the United Presbyterian Church of North America.

Wherefore the plaintiffs demand judgment against the defendant—that the act of the congregation of the defendant in pretending to separate from the United Presbyterian Church and uniting with the Old School Presbyterian Church as aforesaid, be declared null and void—that the defendant desist and refrain from permitting the said George W. Patton or any other minister or pastor not in full ministerial communion and connection with the United Presbyterian Church, and ordained and installed over said church and congregation, according to the form of church government of said church, to use the church edifice of the defendant or officiate therein

as minister or pastor of said church and congregation, or to occupy the parsonage buildings and grounds belonging to the defendant as such minister or pastor, as and for part compensation for his services as minister or pastor of said church and congregation ; that the defendant be prohibited from using its income, funds and property, or any part thereof, for the support of the said George W. Patton, or any other parson or minister or pastor of said church and congregation, unless said minister or pastor shall be in full ministerial communion and connection with the said United Presbyterian Church ; that these plaintiffs, and such other members of said congregation as adhere with them, be permitted to employ and call a pastor, according to the form of government of the said United Presbyterian Church, to officiate in the church edifice of the defendant, as the pastor of said church and congregation, and that the income, property and funds of the defendant be applied to the support of such pastor and church purposes, before stated, and no other ; that the defendant be required to account for the property, the proceeds and income thereof, during the time the said George W. Patton has been so continued as the pastor of the congregation, since the said pastorate was dissolved as aforesaid ; that the trustees of the defendant be, removed from their offices, to the end that others may be appointed, who will direct, control and administer the affairs of the defendant, according to the trusts, uses and purposes originally designed by the founders, donors and grantors of the said congregation, and for such further or other relief, or both, as the court shall see proper to grant, with costs."

The demurrer specified the following grounds of demurrer to the complaint :

"1. The complaint does not state facts sufficient to constitute a cause of action.

2. The court has no jurisdiction of the subject of the action.

3. There is a defect of parties defendant, in this, that it appears by the complaint that John R. McAuley, Jay Dor-

mon, Henry Haslett, John M. Rice, Daniel J. Haynes, Hamilton Rippir and George Wilkie, are the trustees of the defendant, and are necessary parties defendant to the said action."

*T. R. Strong,* for the appellants. I. The complaint shows, that the title of the defendant to the property, is a title in trust for the defendant, as a religious society, in its ecclesiastical relation to, and subordinate to the constitution, government and rules of the United Presbyterian Church of North America, and for no other purpose whatever. The United Presbyterian Church of North America, represents the general Associate ₐReformed Church, as it existed from 1782 to 1858, when it was united with the Associate Presbyterian Church under the name first mentioned.

In regard to the trust, it is apparent from several considerations : 1. The defendant was organized by an association of sundry persons, members of the Associate Reformed Church, associating themselves together and becoming incorporated as a particular religious society, according to the government of the general society of the Associate Reformed Church, and in connection therewith, and subject to its·authority ; which relation of the defendant to the said general society existed until the union of the latter with the United Presbyterian Society of North America, when it was transferred to the latter society, and still exists. In virtue of this relation, the general society was vested with full jurisdiction and control of the defendant—its property and all its interests. The defendant could not withdraw from the general society, or transfer its property to, or appropriate it to the use of another society, without the consent of the general society—much less could it be done by a portion only of the members of the defendant's society. Hence the trust aforesaid necessarily results.

2. The property was acquired, and the edifice was erected, and improvements were made upon it, with contributions by members of the church and congregation. of the

defendant, manifestly in view of the relation and subjection of the defendant, to the general society, and upon the faith of a continuance thereof; which alone, irrespective of any thing else, impresses upon it the trust mentioned. Any use of the property for any object other than the interests of the defendant in that relation, is, as to all the members of the defendant's society not assenting to it, a palpable breach of faith. No particular form of words is requisite to create a trust. The intent is what the courts look to. (*Fisher* v. *Fields*, 10 *John.* 505. *Pushman* v. *Filliter*, 3 *Vesey Jun.* 9. *Day* v. *Roth*, 18 *N. Y. Rep.* 448.)

3. The terms of the deeds of conveyance of the first two parcels of land mentioned in the complaint — upon which parcels the church edifice stands — clearly import such a trust in connection with the title. The deed from Rice and wife expresses that the grantors convey "in trust, to and for the uses, intents and purposes of the religious society, denominated the Associate Reformed Church, of the town of Seneca, in the county of Ontario and state of New York, either for the express purpose of building a church on said lot, or for a burying place." Then, after describing the land, it is added, "to have and to hold, &c. unto the said party of the second part, and their successors, for the purpose above mentioned, and no other." And it is further stated, that the grantor "hath given and granted the premises unto the said party of the second part and their successors, in trust for the religious society above mentioned, upon the express condition, that the said party of the second part, or their successors, shall not be understood as having a right or title to dispose of, or sell the said described premises," &c. The deed from Carey and wife conveys to the defendant, "and their successors forever, in trust for the religious society denominated the Associate Reformed Church of the town of Seneca, all that," &c. (describing the land,) to have and to hold, &c. unto the "party of the second part and their successors, in trust for the above mentioned religious society, &c. in trust for the

said religious society forever." (*The People* v. *Steele*, 2 *Barb.* 397.)

4. The foregoing considerations may properly be regarded in connection, as well as separately, and taken together, they irresistibly established the trust claimed.

II. It is apparent on the complaint, that the property has been diverted from the trust, and misappropriated, and therefore the trust has been violated by the defendant.

1. In continuing Rev. George W. Patton as pastor, after the dissolution of the pastoral relation between him and the church, by his dismission from the presbytery to unite with another and foreign body; also by a vote of the presbytery, and applying the income, funds and property of the defendant to his support, and refusing to permit Rev. J. F. Boyd to preach for said church, in accordance with the appointment of the presbytery, and the government of the United Presbyterian Church of North America.

2. In assuming to withdraw from the presbytery, and to unite with a foreign body, and continuing to use and appropriate the property in the assumed new relation.

III. The court has full jurisdiction, upon the application of any member of the society, to restrain the defendant from thus diverting and misappropriating the property of the defendant, in violation of the trust, as has been decided in numerous cases in this state. (*People* v. *Steele*, 2 *Barb.* 397. *Miller* v. *Gable*, 2 *Denio*, 492. 10 *Paige*, 627. *Kniskern* v. *Lutheran Churches*, 1 *Sandf. Ch.* 439, 502. *Dutch Church in Garden street* v. *Mott*, 7 *Paige*, 77. *Potter* v. *Chapin*, 6 id. 639. *Williams* v. *Williams*, 4 *Seld.* 525. *Baptist Church in Hartford* v. *Witherell*, 3 *Paige*, 296. *Bowden* v. *McLeod*, 1 *Edw.* 588. *Robertson* v. *Bullions*, 11 *N. Y. Rep.* 243, 252, 265, 266, 270, 271. *Decision of the general term in that case*, 245, 246, 9 *Barb.* 64. *The People*, ex rel. *Gearn*, v. *Farrington*, 22 *How. Pr.* 294.)

The following cases in other states are of the same effect: *Winebrunner* v. *Colder*, 43 *Penn. Rep.* 244, 256. *Sutter*

v. *Trustees of the First Reformed Dutch Church*, 42 *id.* 503, 512. *McGinnis* v. *Watson*, 41 *id.* 9. *Harper* v. *Straus,* 14 *B. Munro*, 48. *Am. Primitive So.* v. *Pilling*, 4 *Zabriskie*, [*N. J.*] 653. *The Associate Reformed Church* v. *The Trustees of the Theological Seminary*, 3 *Green's Ch. R.* 79.

The cases of *Robertson* v. *Bullions*, (11 *N. Y. Rep.* 243,) and *Petty* v. *Tooker*, (21 *id.* 267,) are not in conflict with either of the foregoing positions. In the former case, the two deeds of French to the Associate Congregation of Cambridge, were executed before the incorporation of the religious society. The first deed, executed in 1802, expresses no trust. The second, executed in 1810, is in trust for a particular class of members of the society, and not for the whole society. In 1826 the society was incorporated. Thereafter it received other conveyances of lands, expressing no conditions or limitations, or specification of uses. It also acquired personal property. The controversy in that case was between members of the society in reference to the employment of a deposed minister. A majority of the congregation, and a majority of the trustees, continued the minister as pastor of the society, devoting the revenues of the society to his support, and the trustees refused to permit clergymen sent by the synod to occupy the church edifice, and closed its doors against them. The action was brought by a portion of the minority, praying that the trustees be compelled to permit clergymen in good standing in that church, to preach in the church edifice, and appropriate the property to their support; and that the trustees be required to account, and be removed from office, &c. The vice chancellor of the fourth circuit granted the relief prayed, but upon appeal, the decree was reversed by a general term of this court. It was, however, adjudged by the general term, that the trustees could not rightfully devote the revenues of the corporation to the support of the deposed minister, and they were restrained from employing him thereafter until he should be restored to the office of the ministry. The complainants appealed to the

court of appeals from so much of the decree as was against them, and those portions of the decree only were reviewed on the appeal. The court of appeals decided that the trust in the second deed of French, in favor of particular members, was unauthorized and void; that the society, upon its incorporation, held the property conveyed free from any trust, and that this court had not power to remove the trustees, and therefore the court affirmed the decision of the general term. There was no question in that, as in the present case, as to the existence of a trust arising upon the conveyance or otherwise, for the benefit of the whole society in a particular connection with a general or parent society, or as to a breach of duty by the defendant in assuming to sever its relation with the parent society and form a connection with a foreign organization. And the court in that case virtually concede the validity of such a trust as is claimed in the present case; also the jurisdiction of the court, and the propriety of its exercise, to restrain a breach of the trust; also the correctness of the decree of the general term as to the relief granted. (*See pages* 252, 256, 264, 265, 266, 267, 268–273.) It should be observed here, that there were two opinions in that case in the court of appeals, differing materially in the views taken of the case, one of which was concurred in by four members — the other by three; and upon what views the only remaining member of the court present voted for affirmance, does not appear. The other case of *Petty* v. *Tooker*, was ejectment for a church edifice, and the only point involved and decided was, as to which of the two elections of trustees was valid. To that extent only is that case authority.

IV. It is alleged in the complaint, that the assumed separation of the defendant from the parent society, and forming a connection with a foreign society was resolved upon at a pretended, unauthorized meeting of the congregation irregularly called by a vote of a majority of the members then present; that the connection with a foreign society was applied for

and obtained by certain persons without authority assembled to represent the congregation; that the same was protested against by the plaintiffs, and a large portion of the members of the church, and members of the congregation, and was without the consent of the parent society — thus showing that all the proceedings on the subject of the change of relation were irregular and void.

The connection of the defendant with the United Presbyterian Church of North America, must therefore be regarded as still existing; and even assuming that by a vote of a majority of the members of the society it might change its connection, not having done so by such a vote, and the connection still continuing, it has in its action committed a clear breach of duty. Under the authority of the decision of *Robertson* v. *Bullions* at general term, the plaintiffs are manifestly entitled to have the defendants restrained as to their irregular action and the employment of Mr. Patton. (9 *Barb.* 64.) The defendant in this case has no more right to employ and pay from the revenues of the society, Mr. Patton, a minister sustaining no relation to the general society with which the defendant is connected, than the religious society in *Robertson* v. *Bullions* had to employ, and pay from the funds of the society, Mr. Bullions, a deposed minister. In this respect the two cases are precisely parallel, and the present case calls for the same relief that was granted in the other. Superadded to this ground of claim by the plaintiffs, is the irregular action in respect to severing the relation between the society of the defendant and the general society.

V. The prayer for the removal of the trustees is for relief which the court has no power to grant, as is held in *Robertson* v. *Bullions*. It is therefore mere surplusage. It can not prejudice the plaintiffs as to any relief to which they may be entitled. If entitled to any relief, the demurrer must be overruled. There is no defect of parties defendant in not making the trustees defendants.

1. The trustees are mere officers of the corporation — not

the corporation—and they have no more interest, nor is there any more occasion for making them parties than any other member of the society.

2. The prayer for their removal could not be granted, and no cause of action against them, individually, appears.

3. That prayer is for more than the plaintiffs are entitled to, either with or without the trustees being before the court.

VI. The point made by the demurrer, of a defect of parties, was not sustained at special term. The proper order for a defect of parties would have been, that the other necessary parties be brought in by amendment. (*Code,* § 122.)

VII. The order appealed from should therefore be reversed, and judgment should be given for the plaintiffs, on the demurrer, with costs.

*W. F. Cogswell,* for the respondent. I. Corporations formed under either of the acts for the incorporation of religious societies have no denominational character, and none can be engrafted upon them. (*Petty* v. *Tooker,* 21 *N. Y. Rep.* 267. *Parish of Bellport* v. *Tooker,* 29 *Barb.* 256.)

II. The legal character of the corporation is not affected by the existence or ecclesiastical connection, doctrines, rites, or modes of government of a church or churches formed by the corporators. The existence of the latter, as organized bodies, is not recognized by our municipal law. (*Same cases.*)

III. The title of trustees to their office and to the control of the corporate property, is not impaired by any aberration in doctrine or church government, on their part, or on that of those by whom they are elected. (*Same cases.*)

IV. The trustees, by their control of the corporate property, can determine who shall conduct the religious exercises. (*Same cases.*)

V. The right of a majority of the corporators of a religious society to change their form of church government is

unquestionable. (*Robertson* v. *Bullions,* 1 *Kern.* 243. . 29 *Barb.* 256.)

VI. A court of equity can not prescribe the qualifications of electors of a religious society incorporated under the general act, nor remove the trustees. (2 *John. Ch.* 371. 1 *Kern.* 243.)

VII. The statute of 1861, and that of 1813, are, so far as the propositions above discussed are concerned, identical. (*Webster's Statutes, fol.* 1, *chap.* 79, *p.* 336.)

VIII. The trustees of a religious society can not take a trust for the sole benefit of members of the church, as distinguished from the members of the society, or for the use of a portion of the corporators to the exclusion of others. (1 *Kern.* 243.) They can not receive a trust limited to the support of a particular faith or a particular class of doctrines. (*Same cases.*)

IX. There is nothing in the deeds of the property to the defendant that creates any trust for any particular class of doctrines, or any particular form of church government.

X. If there was, these plaintiffs could take nothing thereby. The trust as a trust would be void. If the deed was so drawn as to create a condition, the grantors, or their heirs, might, if there was a breach of conditions, enter for such breach.

XI. The courts have at last abnegated all right to take the control of church polity or church government, to inquire into differences in matters of faith, or matters of polity. As to such matters the ministers of the law now say, as did one, many centuries ago, " If it were a matter of wrong, or wicked lewdness, oh, ye Jews, reason would that I should bear with you ; but if it be a question of words and names and of your law, look ye to it, for I will be no judge of such matters.".

XII. But even before these cases upon the law of religious corporations, and when there was a different rule supposed to prevail by some of the judges and the profession, this complaint would have been held demurrable. It was not every change,

either in form of government or doctrine, that would be regarded as an abuse of trust, but only in those respects regarded as of the essentials of religion. (*Miller* v. *Gable,* 2 *Denio,* 492; *Opinion of Gardiner,* 548.) In this complaint there is not the slightest intimation of any difference in doctrine or government between the two ecclesiastical bodies, with which the defendant has been connected ; nor is there in fact the slightest. Each is Calvinistic in doctrine and Presbyterial in government; and the only difference between them is that the Associate Reformed Church uses only a metrical version of the Psalms of David, while the Presbyterian Church uses other sacred songs of the English language in addition. A more trivial and unimportant difference can not well be conceived.

*By the Court,* E. DARWIN SMITH, J. The demurrer in this cause was sustained upon the authority of the cases of *Robertson* v. *Bullions,* (1 *Kern.* 243,) and of *Petty* v. *Tooker,* (21 *N. Y. Rep.* 267.)

It was considered by the learned judge, at special term, that those cases had put an end in the courts of justice in this state to the class of controversies and questions of the nature of those presented in the complaint in this action. But it is now urged upon us with much earnestness by learned counsel that this is not the case, and that there is nothing in the decision of either of those cases that necessarily controls the present case or precludes this court from giving the relief sought in the plaintiff's complaint.

The case of *Robertson* v. *Bullions,* was an action in equity, like the present. The bill showed that a religious society was formed in the town of Cambridge in the county of Washington, which was incorporated under the general act of 1813, of this state, relating to incorporation of religious societies, by the name of the Associate Congregation of Cambridge of the county of Washington and state of New York, adhering to the primciples of the Associate

Presbytery of Pennsylvania formerly—now the Associate
Synod of North America. The defendant Bullions had, in
1808, been duly elected and ordained minister of said church,
and continued to officiate as such till 1838, when he was
deposed from the ministry by the presbytery with which the
said church was connected. It appears that notwithstanding
such deposition, a majority of the congregation and of the
trustees .continued him as their pastor and devoted the
revenues of the church to his support, and the trustees
refused to permit two clergymen sent by the Synod, the
ecclesiastical judicatory to which they were subordinate, to
occupy the pulpit; and closed the doors of the church against
them. The suit was brought by the minority of the trustees
and a portion of the minority of the congregation, on behalf
of themselves and others of the minority, to restrain the
trustees from authorizing Mr. Bullions to officiate as minister,
and to permit clergymen in good standing and in full com-
munion with the Associate Presbytery of Cambridge to
preach and teach, and administer the ordinances in said
church, and to remove such trustees who had so allowed said
Bullions to preach, and to require them and the said Bullions
to account for the use of said property after the deposition
of said Bullions. The cause was brought to a hearing
before the vice chancellor of the 4th circuit, who made a
decree granting the relief prayed for. The defendants appeal-
ed from this decree and the same was reversed in the general
term of this court, (see 9 *Barb.* 65,) except that the general
term affirmed so much thereof as restrained the defendants,
the trustees, from using the temporalities of the corporation
for the support of Dr. Bullions' ministry as long as he was
under sentence of deposition. The defendants acquiesced in
this decree, but the complainants appealed to the court of
appeals from so much of said decree as was against them.
The only question presented upon this appeal to the court of
appeals was therefore strictly upon that portion of the decree
of the general term which reversed the decision or decree of

the vice chancellor. So far as the court at general term had affirmed the decree of the vice chancellor, that portion of the judgment not being appealed from stood, and the court of appeals made and could render no judgment thereupon. It follows, therefore, that so far as the court at general term assumed jurisdiction to restrain the trustees from using the temporalities of the corporation for the support of Dr. Bullions, so long as he was under sentence of deposition, the question not being properly before the court, it can not be held to be strictly decided whether the court could or should exercise such power in such cases.

The case of *Petty* v. *Tooker* was an action of ejectment, to try the question which of two sets of trustees were the rightful trustees and as such entitled to the possession and control of the temporalities of the church. The plaintiffs and defendants both claimed to be the legal trustees of a religious society incorporated under the 3d section of the act of 1813.

There is another distinction between these two cases of *Robertson* v. *Bullions* and *Petty* v. *Tooker*, and the present case which is pressed upon us by counsel.

In the case of *Petty* v. *Tooker*, the land on which the church edifice was erected was conveyed to the trustees after the society was incorporated, unconditionally, and without any words or terms creating or declaring, or attempting to create or declare, any trust.

In the case of *Robertson* v. *Bullions* the questions chiefly discussed and considered in this court related to a deed from one French, made in 1786, after the congregation was organized, which conveyed the land on which the church edifice was erected. In this deed the land was conveyed to five persons by name, described as chosen and elected trustees of the Associate Presbytery of Pennsylvania and their successors forever, habendum to the sole and only proper use, benefit and behoof of the said associate congregation of Cambridge. The deed contained a covenant for such further

assurance as should be necessary to vest the land in the parties of the second part and their successors, "for the sole use of said Associate Congregation of Cambridge." When this society became incorporated, in 1826, the title thus conveyed confessedly passed to and vested in the corporation under the first section of the act for the incorporation of religious societies, of 1813.

In this case the society was incorporated in 1807, under the act for the incorporation of religious societies, then in force, which was in substance the same as the act of 1813 ; and it is not claimed that the plaintiffs' rights are not precisely the same as they would be under the act of 1813 if the incorporation had taken place under the latter act. The land on which the church edifice now claimed and possessed by the defendants was erected, was conveyed by two deeds — one from Caleb Rice, dated February 24, 1808, in which the grantees named are five persons, described as "trustees of the Associate Reformed Church of the town of Seneca" &c.

This deed conveys one half an acre of land in terms following : " Witnesseth, that the said party of the first part, for the support encouragement and preferment of religion, hath given, granted, aliened and confirmed, and by these presents doth give, grant, alien, enfeoff and confirm unto the said party of the second part and their successors forever, in trust to and for the uses, interests and purposes of the religious society denominated the Associate Reformed Church of the town of Seneca in the county of Ontario and state of New York, either for the express purpose of building a church on said lot or for a burying place." The other deed is from Elihu Cary and wife, dated February 24, 1808, and is in the precise words of the former deed, except the description of the land and the terms of the trust, which is in these words : " In trust for the religious society denominated the Associate Reformed Church of the town of Seneca." A third deed described in the complaint is dated the 29th of November 1856, and is a conveyance to the trustees of

the Associate Reformed Church of the town of Seneca, of two acres of land, with no declaration of trust except that the land is conveyed "for a parsonage and nothing else."

We are prepared now to consider what was in fact decided in the court of appeals in these cases of *Robertson* v. *Bullions* and *Petty* v. *Tooker*.

When the case of Bullions was decided the court of appeals was composed of six judges. Judge Ruggles was absent, and Judge Johnson, for some reason, took no part in the decision. The leading opinion was written by Judge Selden, who, after an elaborate discussion of the questions presented, concluded his very able opinion by recapitulating the points which he had attempted to establish and which consist of eight points or propositions : 1st. That that court could not review any portion of the decree of the supreme court not appealed from. 2d. That a religious incorporation, under our statute, consists not of the trustees alone, but of the members of the society ; that the society itself is incorporated, and its members are the corporators. 3d. That the relation of the trustees to the society is not that of a private trustee to the *cestui que trust*, but they are managing officers of the corporation—like the directors of a bank or rail road corporation. 4th. That an incorporated religious society, under our law, does not belong to that class of ecclesiastical corporations in the sense of the English law ; but is to be regarded as a civil corporation and governed by the ordinary rules of the common law. 5th. That courts of equity have no power to remove the trustees of the incorporations, or to prescribe the qualifications of electors of such trustees. 6th. That the trustees of a religious corporation, under our statute, can not take a trust to the sole benefit of members of the church as distinguished from other members of the congregation ; no trust being authorized except for the whole society. 7th. That when a deed is executed to trustees, for religious purposes, and the use is expressed in general and not in specific terms, it can not be inferred from the religious

tenets and faith of the grantee that it was intended to limit the use to the support of the particular doctrines which he preferred. 8th. That the trustees of a religious corporation in this state can not receive a trust limited to the support of a particular faith or a particular class of doctrines, for the reason that it is inconsistent with those provisions of the statute which give to the majority of the congregation, without regard to their religious tenets, the entire control over the revenues of the corporation.

Three of the judges, Gardiner, Parker and Edwards, concurred in the entire opinion of Judge Selden. Judge Denio dissented from the 8th of the foregoing propositions, and must be deemed, as the case is reported, to have assented to the other seven propositions, which would make a majority of the court, and sufficient to decide the case, concur in the said seven propositions. Judge Allen, in a separate opinion, discussed the case, and in his opinion came to the same conclusion, in effect, on several of the said propositions. So far, therefore, as the said seven propositions are essential to the decision they must be deemed the law of the case, and authority binding as such.

The character and nature of religious incorporations, in this state, and the powers and duties of courts of equity over and in respect to such corporations, and over the property held by them or conveyed for the use of such corporation, or of the society or church connected therewith or designed for their benefit, were necessarily involved in the discussion and decision of the questions presented upon the appeal in said cause. I do not see why each of the said eight propositions, except the seventh, were not necessarily raised in the case and involved in its decision.

The first proposition admits, in effect, that the question whether the decree of the general term, so far as it restrained the trustees from using the temporalities of the corporation for the support of Dr. Bullions as long as he was ander sentence of deposition, was not before the court. But it is

quite apparent that if that portion of the judgment below had been appealed from and had been before the court, it would have been reversed. Judge Selden calls it an error. He says: " While, therefore, it is settled, so far as these parties are concerned, by the acquiescence of the defendants in the decree of the supreme court, that the trustees had and still have no right to employ Dr. Bullions, there is no reason for following up that error by requiring them to account.

The decision of this court as contained in the other propositions concurred in by the five judges, implies that such part of the decree below was erroneous, and that the court had no power to control the action of the trustees in the employment or payment of a minister. And this conclusion, it seems to me, inevitably follows the decision, that in this class of incorporations the whole body of the congregation is incorporate, and that all property conveyed to or held by the trustees belongs to the whole body of the corporators or of the society, without regard to any discrimination between those in communion and those not in communion or fellowship with the church considered as a spiritual body connected with such congregation. The majority of corporators elect the trustees, and a majority of the trustees employ and pay the minister.

This principle is more fully asserted in the case of *Petty* v. *Tooker*. In that case there was but one opinion, and the report states that all the judges of the court concurred therein. In this case a majority of the trustees, with the concurrence of a majority of the congregation, had changed the ecclesiastical relations of the society confessedly founded and established as congregational, from a congregational to the presbyterian, by the employment of a presbyterian minister and exclusion of the congregational minister from the exercise of his proper functions in the church building, and by opening the meeting house to the ministrations of such presbyterian minister. Judge Selden says expressly that " Corporations formed under the 3d section of the act of

1813 have no denominational character, nor can such character be in any manner engrafted upon them."

This case clearly decides that the trustees of such a religious society have the legal right to employ such minister as they see fit; and that they had in that case a perfect right to employ a presbyterian minister and exclude the congregational minister from the pulpit; and that no trust existed or could be created which any court could enforce, in conflict with their full authority and discretion on the subject.

These views are necessarily decisive of this case. The trustees of the religious society denominated the Associate Reformed Church of the town of Seneca (the defendants' title) took this property conveyed to them by the several deeds mentioned in the complaint for the use of such society according to the law and principles which governed the organization of such corporations. They could not take it or hold it in any other character, or upon any other trust. The property thus conveyed belongs to the corporation, which consists of all the members of the society entitled to vote in the election of trustees, a majority of whom thus controls the property of the corporation; and as a necessary consequence decides the ecclesiastical relations and connections of the society and the character of the religious views, opinions and doctrines inculcated from its pulpit.

But if this were otherwise, and the courts of equity were bound to enforce trusts created to perpetuate particular creeds or classes of christian doctrines or of particular ecclesiastical connection, and involving questions, issues and inquiries in respect to the diversities, refinements and subtleties of religious belief or opinions, I think it is quite clear that within the rule as the question was stated by Judge Gardiner in *Miller* v. *Gable*, (2 *Denio*, 540,) we should not be authorized to interfere in this case, and the demurrer was properly sustained at special term. The learned judge in that case said, that when the trust is declared in writing, and its nature and extent clearly defined, the court has no alternative but to

Burrel *v.* Associate Reformed Church.

carry it into execution ; but he also, in the same case, said that it would be a plain and palpable abuse of trust which will influence a court of equity to interpose respecting a controversy growing out of a difference in religious or sectarian tenets.

Within this rule, which is as far, I think, as any equity judge in this country would now feel authorized to go, there was not in this case such a departure from what in the strictest sense can be regarded the trust declared in the deeds to the defendants as would justify the interference of this court.

The trust as declared in the first and most important deed, from Caleb Rice, was to and for the uses, interests and purposes of the religious society denominated the Associate Reformed Church of the town of Seneca, either for the express purpose of building a church on said lot or for a burying place. The defendants, by the same title described in the deed, still occupy, possess and use said lot. It has not been diverted to any other than religious uses. The deed does not declare the ecclesiastical connection of the society at the time of its date, or upon its face seek professedly to perpetuate its connection with any ecclesiastical judicatory. The plaintiff and those in behalf of whom this suit was commenced profess to adhere to the constitution and standard of the United Presbyterian Church of North America.

The trustees of the corporation are also presbyterian, and have employed a presbyterian minister to occupy the pulpit and officiate in the church, in good standing in the presbytery of Rochester, and which is subordinate to and in connection with the Old School Presbyterian Church of the United States. I can not think that there is in this course of proceeding on the part of the trustees any abuse of the trust, or that it involves any special departure in things fundamental in respect to the spiritual concerns and worship or doctrines of the church. I think the judgment rendered at the special term was correct, and that the same should be affirmed, with costs.

[MONROE GENERAL TERM, September 5, 1865. *James C. Smith, Johnson* and *E. Darwin Smith,* Justices.]