## WATKINS V. WILCOX.

*Religious corporations — change of name of — sale of property by — rights of corporator — charitable uses — all have like rights and authority — are civil corporations — are individual bodies not controlled by ecclesiastical restrictions — majority of corporators may change ecclesiastical connection.*

It is not necessary that all the corporators of a religious corporation should be heard on an application to change the name of such corporation.

Where a corporation sold real estate under an order of the court to a *bona fide* purchaser, and the corporation received from him the value of the property conveyed, *held,* that a member of the corporation could not set up against the sale that by reason of irregularities in the proceedings the corporation did not give a valid title.

The law of charitable uses has no existence in this State. " Corporations take and hold property only to the amount and for the purposes prescribed by their charters or acts of incorporation."

Religious corporations organized under the different sections (§§ 1, 2, 3) of the act of 1813 (chap. 60) and their trustees all have the same rights and authority.

Religious societies are not ecclesiastical corporations in the meaning of the English law, but civil corporations consisting not of trustees but of the members of the society. The right to vote in such a corporation depends on a connection with the particular society and not on one with the ecclesiastical body to which the society belongs. The majority of corporators in a religious corporation have the right to control, and they are free from any ecclesiastical restrictions.

An almost unanimous majority of a religious society, incorporated as a Dutch Reformed church under the provisions of section 2 of chapter 60 of the Laws of 1813, voted to change their ecclesiastical connection and become a Congregational church, and did so. *Held,* that they had the right to do so, and the minority, who did not favor the change and kept their connection with the Dutch Reformed body, were not entitled to retain control of the property of the corporation.

APPEAL by plaintiff from a judgment in favor of defendants entered upon a decision of the court at special term.

The action was brought by Edmund H. Watkins against Timothy D. Wilcox and others, trustees, etc., of the First Congregational Church, of Ithaca, to have a church edifice and parsonage given to the control of a minority of a church congregation. In the year 1830 there existed and still exists, in this State, an organized religious denomination known as " The Reformed Protestant Dutch Church." In that year a congregation was organized at Ithaca,

according to the rules and usages of such denomination, and was incorporated under the provisions of Laws 1813, chap. 60, § 2, under the title of "The Elders and Deacons of the Protestant Reformed Dutch Church of Ithaca." By the gifts and contributions made by the members of the church, a church was erected and a parsonage purchased. The church was connected with the classis of Geneva, of said denomination, and so remained until 1872. In that year the congregation, with only one dissenting voice, and, in the following year, the consistory of the church, resolved to sever the connection of the body with said classis and with said denomination, for the purpose of becoming a Congregational church. Subsequently the name of the corporation was changed by an order of a justice of the Supreme Court, duly made, to that of "The First Congregational Church of Ithaca, New York." The parsonage was also sold. Plaintiff had been a member of the corporation since its organization, and had contributed, from time to time, considerable sums in support of its objects, and was a communicant in the church. Such other facts as are material appear in the opinion.

*S. D. Halliday* and *Samuel A. Foot*, for appellant. The appellant could bring this action. *Bowden* v. *M'Leod*, 1 Edw. Ch. 588; *Kniskern* v. *Lutheran Churches*, 1 Sandf. Ch. 439; *Watson* v. *Jones*, 13 Wall. 714. In case of a divided congregation the church property belongs to that part of it which acts in harmony with the church laws, and a seceding majority lose their rights. *McGinnis* v. *Watson*, 41 Penn. 9; *Sutter* v. *Trustees of First Reformed Dutch Church*, 42 id. 503; *Winebrenner* v. *Colder*, 43 id. 244; *Watson* v. *Jones*, 13 Wall. 734; *American Primitive Society* v. *Pilling*, 4 Zabr. (N. J.) 653; *Bowden and others* v. *M'Leod et al.*, 1 Edw. Ch. 592; *Kniskern* v. *Lutheran Churches of St. John's, etc.*, 1 Sandf. Ch. 439; *Miller* v. *Gable*, 2 Denio, 492; *People* v. *Steele*, 2 Barb. 398, 405; *Robertson* v. *Bullions*, 11 N. Y. 243; *Petty* v. *Tooker*, 29 Barb. 256; S. C., 21 N. Y. 267; *Burrel* v. *Associate Reformed Church*, 44 Barb. 282; *Gram* v. *Prussia, etc., German Society*, 36 N. Y. 161.

*Marcus Lyon* and *F. M. Finch*, for respondents.

Present — LEARNED, P. J., and JAMES, J.

LEARNED, P. J. The plaintiff asks for relief in several respects.

First. He asks that an order of a justice of this court, changing the name of a religious corporation, be declared void. The corporation is not a party to this action, and he is only one of the corporators. It was not necessary that all the corporators should be heard on that application. Laws 1853, chap. 323. I do not see that he has any standing in court on that point.

Second. He asks that an order of the county court, authorizing the sale of certain real estate of this corporation, together with the sale in pursuance thereof, be declared void. The purchaser is a party to this action.

There may be cases in which a corporator, making the corporation a party, can sustain an action in equity to declare a conveyance made by the corporation to be void. Such would be a case of fraud and collusion between the purchaser and the officers of the corporation. There is nothing of that kind alleged. It is not pretended that the property was not sold for a fair price, and paid for *bona fide;* or that the avails were not applied as directed by the order. The objections raised touch the legal regularity of the proceedings before the county court and the validity of the deed. If the purchaser's title be defective by reason of any of these matters, it will be time enough to try that question when the corporation shall bring ejectment against him. The plaintiff does not show himself to be wronged when the corporation has received full payment for property which they have, as he alleges, failed to convey by a good and valid deed.

Third. He asks a judgment declaring that the persons who, previous to a day named, were members of a certain religious corporation, and who seceded that day, ceased to be members of said corporation.

So far as the words " members of that church " imply religious rights and privileges, we have nothing to do with the matter. So far as they imply civil rights, that is, rights to property, or rights in a legal corporation, no judgment would be valid, because those persons are not parties. Furthermore, we are not to pass on the mere question who were corporators at a certain time, until some one claims that his rights as such corporator were interfered with, and then we have only to do with his own case

Fourth. The principal matter, however, involved is the question whether or not certain of the defendants are now the lawful trus-

tees of this corporation, and the principal relief asked is that the transfer to them of the care of the temporal affairs should be held void, and that the consistory, as constituted in 1872, should be adjudged entitled thereto.

The incorporation in question was formed under section two of "An act to provide for the incorporation of religious societies," passed April 5, 1813, under the name of "The Elders and Deacons of the Protestant Reformed Dutch Church of Ithaca." It was in connection with the general synod of the Reformed Church in America and with the classis of Geneva, an inferior ecclesiastical body connected therewith.

In July, 1872, a large majority of the church and congregation petitioned the classis to dismiss the church from its ecclesiastical connection. Nearly all the consistory did the same. At a meeting of the consistory in October, 1872, with one only dissenting (the plaintiff), they requested the dissolution of the relation between the church and that classis. The matter was referred by the classis to a committee who reported, and whose report was adopted in April, 1873.

In that report the committee state that the connection between this church at Ithaca and the classis "was and is voluntary, and that either party has the legal right to terminate it whenever such party shall think proper." But the classis declined to terminate the connection itself.

In December, 1872, a resolution was passed by the congregation recommending that the church sever its relations with the body with which it was connected. The vote was twenty-three male persons in favor, and one opposed; sixty of all present in favor, and one opposed. The same day the church voted to disconnect itself from the classis of Geneva, and the general synod of the Reformed Church in America. The vote was sixteen male members in favor, and one opposed, and forty-six of all members, male and female, present in favor, and one opposed.

In February, 1873, the consistory of this church voted to confide the management of the temporal concerns to a board of nine trustees, under chapter 90, Laws 1835, and trustees were elected accordingly. Subsequent to this an application was made to a justice of the Supreme Court for a change of the name of the church; and it was changed accordingly to "The First Congregational Church of Ithaca, New York." This application was in

accordance with a unanimous vote at a meeting where nearly all the members of the church were present.

In all this, how has the plaintiff been injured? The change of name is not of itself a change of religious doctrines or systems; although it may be significant of such a change. For instance, if the name had been changed to "The Catholic and Apostolic Church of Ithaca," it would not follow that the defendants had adopted the Irvingite belief.

Then, as to the election of trustees to manage the temporal affairs of the church, that is a course quite consistent with the doctrines of the Dutch Reformed system, and adopted by some of their churches. In fact the law was passed for their especial benefit.

The consistory or the church have elected or called a clergyman who is a congregationalist. But it appears that clergymen of the Congregational order have, in other instances, preached in Dutch Reformed churches. The plaintiff, however, states that he cannot conscientiously worship with this Congregational church. This would, however, seem to be owing to a change in the form of worship, as there is no proof of any material change in doctrine.

But it may be well to examine this case on the broad grounds raised by the plaintiff's counsel. In substance, these are that, as the majority of the corporation have severed themselves from the old ecclesiastical connection, the property belongs to the minority.

It is important here to notice that the law of charitable uses has no existence in this State. "Corporations take and hold property only to the amount and for the purposes prescribed by their charters or acts of incorporation. *Holmes* v. *Mead*, 52 N. Y. 332. And in the act to provide for the incorporation of religious societies (Laws 1813, chap. 60), the only purpose prescribed is to be found in the fourth section. There it is said that the trustees of every church, congregation or society hold the real and personal estate "for the use of such church, congregation or society or other pious uses." So far, then, as the express language of the act goes, there is nothing which declares that the trustees hold the property for the support of the believers in any particular tenets.

That act is one in all its scope. It provides for the incorporation of religious societies in three different cases: First. In the Protestant Episcopal Church; second, in the Dutch Reformed;

third, in all other churches. In each instance it provides for the election of persons to be trustees.

In the first, these are the rector, wardens and vestrymen ; in the second the minister, elders and deacons ; in the third, those who are elected as trustees. But, in each case, their authority is not by virtue of any ecclesiastical office ; it is simply because the law declares them to be trustees. And the fourth section speaks of all these trustees alike, giving them, in each case, the same powers.

I see no reason to think that the trustees of societies, organized under one section of this act, have any different rights or authority from the trustees of societies organized under either of the other sections, or that any system was intended to be established under section third different from that established under sections one and two. The counsel for the plaintiff urges strongly that the contrary is true, and that an *ecclesiastical* character is possessed by the societies formed under sections one and two, which does not belong to those formed under section third.

But we must notice that there are many other large denominations which are as thoroughly organized and are as much accustomed to have what, by a misnomer, are called ecclesiastical courts, as either of those denominations named in the first and second sections. Such, to name no others, are the Presbyterian, the Methodist Episcopal, the Lutheran.

Now the religious societies, connected in belief with these organizations, must incorporate themselves under the third section of the act, and have done so. To take the Presbyterian denomination, as an illustration, it has its session, presbytery, synod and general assembly very closely analogous to the consistory, classis, particular synod and general synod of the Dutch Church. And while it is not easy to measure ecclesiastical claims to jurisdiction, those of the Presbyterian denomination are probably as comprehensive as those of the Dutch Reformed. Unless, then, there should be some very positive indication to the contrary, it would be unreasonable to think that any different rights or duties were given by the same act to the religious societies and their trustees incorporated by the Dutch Reformed, from those given to the societies and their trustees incorporated by the Presbyterians.

The act was intended to form a general system, and to make only such variations as would facilitate in each denomination the

election of trustees, by harmonizing such election with old and existing customs.

I think, then, that the law of this case is settled by the decision of *Robertson* v. *Bullions*, 11 N. Y. 243, and by the cases which have followed the views there expressed. Religious societies are not ecclesiastical corporations in the meaning of the English law. They are civil corporations. The corporation consists, not of the trustees, but of the members of the society ; and in the language of that decision : " It was the intention of the legislature to place the control of the temporal affairs of these societies in the hands of a majority of the corporators, independent of priest or bishop, presbytery or synod, or other ecclesiastical judicatory."

The doctrine laid down in that case is affirmed in language directly applicable to the present controversy in the case of *Petty* v. *Tooker*, 21 N. Y. 267, and again in *Gram* v. *Prussia Society*, 36 id. 161. It is followed in *Burrell* v. *Associate Reformed Church*, 44 Barb. 282. And whether these decisions were made in cases of corporations organized under the third section, or under the first and second, does not seem to me to have been considered important.

The language of the decisions is general, and in no respect limited. And if we examine the act in question, we shall find that all the provisions giving rights and powers to the trustees are general ; and that the only distinction is in respect to the mode of election. Thus, section four, already mentioned, defines the powers of the " trustees of every church congregation or society hereinabove mentioned." Section eight deprives the trustees of "any church congregation or society" of the power to fix the salary of a minister. Section nine authorizes "any religious corporation," etc., to reduce the number of its trustees. Section eleven gives the general power to apply for leave to sell real estate.

It is insisted that one qualification of a voter in corporations, under the second section, is to be a communicant in good standing ; and that the members of this church have ceased to be such.

The legislature, by the act of 1835, chap. 90, authorized any church, in connection with the Reformed Dutch Church, to modify their system by electing trustees. It is not found by the referee that the persons who voted for these trustees were not members of that church in good standing. The consistory of the church is the tribunal which decides on the standing of the members, and that body had not excommunicated any of these.

Their right to vote was undisturbed. If we look at the first section of this act, by way of illustration, we shall see that the right to vote depends on a connection with the particular organization — the individual society. The voter is one "who shall have belonged to such church or congregation," etc., "or by some joint act of the parties and of the rector, whereby," etc. Thus, it is a union or connection with the particular society, not with the denomination at large, which gives the right to a vote.

The same is seen in section third, qualified by section seventh, making stated attendance and contribution the qualification. And analogy shows that, under the second section, the good standing which is said to be necessary under "the rules and usages," is a good standing in the particular church or society.

It seems to me, therefore, to follow from the decisions last above mentioned, and from the case of *Holmes* v. *Mead*, that the majority of the corporators have the right to control; and that they are free from any ecclesiastical restrictions. See, also, *Austin* v. *Searing*, 16 N. Y. 112. If there is any thing contrary to this view in *Watson* v. *Jones*, 13 Wall. 714, or in the decisions of other States, it is not binding.

And I fully agree with the principle which thus seems to me to be established. In spite of written symbols, the beliefs of men change and have changed; and I look with no favor on a rule which would permit the past generations to appropriate property to the support of their beliefs, so permanently as to deprive the present of the use of such property, in case those old beliefs shall have passed away.

The judgment should be affirmed, with costs.

*Judgment affirmed.*