WALTER J. WILSON ET AL. v. WILLIAM LIVINGSTONE, JR., ET AL.

*Religious societies[1]—Corporate property—Manner of use—Denominational affiliation of members.*

Complainants are members of a religious society organized under Act No. 145, Laws of 1855, as originally enacted, under the corporate name of the "First Associate Presbyterian Church of Detroit." Soon after the organization of the society it received an ordinary warranty deed of a lot and building, which was used as a place of worship until 1887, when the premises were sold, and with the proceeds derived from the sale those in question in this suit were purchased, the title being taken in the corporate name without any trust or limitation being expressed in the deed. When the society was organized there existed in the United States two bodies of Christians known, respectively, as the "Associate Presbyterian Church of North America" and the "Associate Reformed Church of North America." In 1858 these bodies were united under the name of the "United Presbyterian Church," in which action the Detroit church acquiesced. In 1889, at a regularly called meeting, the church, by a majority vote of the members, voted

---

[1] RELIGIOUS SOCIETIES.

For cases involving the construction of certain provisions of Act No. 145, Laws of 1855, entitled "An act concerning churches and religious societies, establishing uniform rules for the acquisition, tenure, control, and disposition of property conveyed or dedicated for religious purposes," being, as amended, chapter 170, How. Stat., see:

*General Purpose of Act.*

*In re Estate of Ticknor*, 13 Mich. 44, 52, holding that the general purpose of the act was to revise the previous legislation concerning the incorporation of religious societies, to require them to become organized in such a way as to have suitable trustees representing the society, and more especially to cut off all pretense of corporate capacity derived from any authority or system of laws not known to our courts, and not subject to our own supervision, in so far as all the temporal possessions of the church should be concerned.

*Corporate Existence.*

1. *Fredenburg v. Church*, 37 Mich. 476, holding that the corporate existence of a church is not established by showing that the associates held the ordinary meetings of a religious society and elected officers, such acts being as consistent with the exist-

to sever its connection with the presbytery of the United Presbyterian Church, and to unite with the Presbyterian Church, another religious body, whose creed differed in some respects from that of the United Presbyterian Church. Thereupon complainants filed a bill praying that the defendants, who are the trustees of the First Associate Presbyterian Church of Detroit, be declared to be the trustees for complainants and the other members who adhere to the faith of the United Presbyterian Church, and that they be restrained from conveying said church property. And in affirming a decree dismissing said bill it is held:

*a*—How far the power of a religious society as to the disposal or use of its property is limited by the doctrine of *ultra vires* need not be discussed, further than to say that its members could probably insist upon its property being applied to religious purposes, such being the object of the society; but to say that such religious purposes must be determined and limited by the views of individual members, and not by the will of the majority, is another matter.

*b*—To hold that the power of the society, under the law, to choose its own method of worship, and to use its property for religious purposes in accordance with the opinions or wishes of the majority of its members, which rights it certainly had

ence of an unincorporated association as of a corporate body.

2. *Allen v. Duffie*, 43 Mich. 1, holding:

*a*—That the election by the members of a church, as shown by its record, of trustees to hold the property of the church in trust for said church, is insufficient to effect a statutory incorporation.

*b*—That, in a suit brought by certain persons who describe themselves as trustees for a certain religious society, in the absence of an averment or recital of incorporation, it must be assumed that none exists or is relied upon.

3. *Trustees v. Webber*, 54 Mich. 571, 573, holding it essential to the legal existence of a religious society under the statute that the articles of association should be signed by the original associates.

*When Corporate Existence Presumed from the Exercise of Corporate Franchises.*

1. *Church v. Clark*, 41 Mich. 730, 736, holding that the purpose of How. Stat. § 4649, which provides "that, whenever any religious society or corporation shall have exercised the franchises and privileges of a corporation for the term of ten successive years, the same shall be presumed to have been legally organized in pursuance of the laws of this State," is to put upon those who might be disposed to deny the incorporation the necessity of doing so by effectual proceedings within a reasonable time, and not suffer it to be delayed until the evidence may be lost by the death of those who may know the facts, or the loss of papers or other proofs; and that it can have no application where no distinct claim or user of corporate rights appears.

2  *Church v. Rechlin*, 49 Mich. 515, holding that where the members of an unincorporated religious society, under the supposition that they

at the time of its organization, became limited by the denominational affiliations of its members through a spiritual organization formed by them, so that it was forever thereafter precluded from permitting the use of its property in any other way than that prescribed by the regulations, creed, or discipline of such organization, would be to make the power of these corporations depend, not upon the law under which they are created, but upon the opinions of those who signed the articles of association, or, as in this case, upon the regulations of the superior denominational body with which such spiritual organization might first chance or choose to connect itself.

Appeal from Wayne. (Gartner, J.) Argued January 5, 1894. Decided April 10, 1894.

Bill to declare the defendants to be trustees of certain church property, for complainants and certain others, and to restrain them from conveying the same. Complainants appeal. Decree affirmed. The facts are stated in the opinion.

---

have become legally incorporated, exercise for 10 years, through prescribed statutory agencies, the ordinary functions of an incorporated religious society, the society will be presumed to have been in existence for the entire 10 years, and a new organization formed under the statute, which disregards the old one and treats it as invalid, cannot displace it without the practical acquiescence of its members.

3. *Trustees v. Webber*, 54 Mich. 571, 573, holding that the statute applies where an honest attempt on the part of the members of a church to perfect a statutory organization resulted in the adoption of an imperfect one, and action thereunder by the society for more than 10 consecutive years, during all of which time it exercised, among others, the most important functions conferred by the statute. namely, buying and selling church real estate, receiving and paying money therefor, making and receiving deeds thereof, and incurring and collecting debts, all in the full belief by all parties that the society had a legal existence under the statute and the right so to do, which was never doubted, although the society had some litigation, until one of its own members thought best to put it in issue in said suit.

*Mortgaging Corporate Property.*

1. *Walrath v. Campbell*, 28 Mich. 111, holding:

a—That the trustees, and not the society, constitute the corporation.

b—That the trustees are authorized to sell or mortgage the corporate personal property without obtaining the assent of two-thirds of the members present and entitled to vote at a meeting of the society called for that purpose, as required by section 9 of the act

*W. F. Atkinson* (*John Atkinson*, of counsel), for complainants.

*F. H. Canfield*, for defendants.

HOOKER, J. On March 8, 1856, Robert Downie and 19 other persons organized a religious society under Act No. 145, Laws of 1855, its corporate name being the First Associate Presbyterian Church of Detroit. The following is a copy of said articles, viz.:

"ARTICLES OF ASSOCIATION OF THE FIRST ASSOCIATE
    PRESBYTERIAN CHURCH OF DETROIT.

"1. This society is organized under the provision of Act No. 145, entitled 'An act concerning churches and religious societies, establishing uniform rules for the acquisition, tenure, control, and disposition of the property conveyed or dedicated for religious purposes, and to repeal chapter fifty-two of the Revised Statutes,' approved February 13, 1855.

"2. There shall be three trustees elected to take charge

in case of the sale or conveyance of its real estate; and see *Scott v. Church*, 50 Mich. 528, where the same doctrine is applied to a mortgage by the trustees of the corporate real estate.

*c*—That notice of such special meeting, as well as its action, or any vote or direction it may have given, must be proved by the best evidence,—the written notice itself, and the record of the meeting,—or the loss of or inability to procure such notice or record must be shown before secondary evidence can be given of its contents.

*d*—That parol evidence is admissible to prove the official character of persons who describe themselves as trustees of a certain church in a mortgage by them executed on church property.

*e*—That no consideration is shown for such a mortgage when given to secure the payment of the pastor's salary, in the absence of proof that the salary was ascertained and fixed by a majority of the society entitled to vote at the election of trustees, as required by section 18 of the act.

2. *Scott v. Church*, 50 Mich. 528, 531, holding that where two of the three trustees of a religious society, the third one being absent in another state, meet without notice to any one else, and execute a mortgage on the real estate of the society to secure a loan with which to complete the meeting house then in course of erection, they are lawfully convened, within section 12 of the act, which provides that any two of the trustees may at any time call a meeting of the trustees, and a majority of them, being lawfully convened, shall be competent to do and perform all matters and things which such trustees are authorized to do and perform.

*Expulsion and Reinstatement of Members.*

1. *Hardin v. Trustees*, 51 Mich. 137, holding that an action to

of the property belonging to and transact all the affairs relating to the temporalities of this society.

"3. The corporate style of this society shall be the 'First Associate Presbyterian Church of Detroit.'"

The name is the only thing in the articles that indicates the denomination or tenets of the society.    On May 15, 1856, a deed was made by the Second Presbyterian Church of Detroit to the First Associate Presbyterian Church of Detroit, of lot 6 on the Military reserve.    This included a church standing upon said lot, which was thereafter used by the First Associate Presbyterian Church as its place of worship until 1887, when the premises were sold to the federal government for a post-office cite, and other premises were purchased by the society for a place of worship; title being taken, as before, by an ordinary warranty deed, without trust or limitation expressed therein.

At the time of the organization of said society there existed in the United States two bodies of Christians

recover damages for the expulsion of a member from the church with which an incorporated religious society is connected will not lie against the society.

2. *Meister v. Congregation*, 37 Mich. 542, holding that *mandamus* will not lie to reinstate a member of a religious society who has been irregularly expelled, where it appears that he has acted in hostility to the interests of the society and given grounds for regular expulsion, that his restoration would destroy the society, and that, if restored, he might be immediately expelled.

*Miscellaneous Decisions.*

1. *Church v. Clark*, 41 Mich. 730, 739, holding that under the operation of section 7 of the act, which provides that the trustees "may take into their possession and custody all the temporalities of the church, congregation, or society, whether the same shall consist of real or personal estate, and whether the same may have been given, granted, or devised directly or indirectly to such church, congregation, or society, or to any other person or persons for their use," and of How. Stat. § 5565, which provides that "every person who, by virtue of any grant, assignment, or devise', now is or hereafter shall be entitled to the actual possession of lands, and the receipt of the rents and profits thereof, in law or in equity, shall be deemed to have a legal estate therein of the same quality and duration, and subject to the same conditions, as his beneficial interest," the title to land held by the trustees of an unincorporated religious society, in trust for the society, at the time of its incorporation, passes immediately to the corporation; and see, to the same effect, *Church v. Rechlin*, 49 Mich. 515.

known, respectively, as the "Associate Presbyterian Church of North America" and the "Associate Reformed Church of North America." In 1858 action was taken by the general assemblies of these churches to unite under the name of the "United Presbyterian Church." The First Associate Presbyterian Church of Detroit acquiesced in this action, thereafter sending delegates to the general assembly of what was know as the "United Presbyterian Church." In 1889 all but one of the Detroit churches concluded to sever their connection with the presbytery of the United Presbyterian Church, and to unite with the Presbyterian Church. At a regularly called meeting, the First Associate Presbyterian Church took such action. About 80 members were present, all but 11 of whom voted

2. *Allen v. Duffie*, 43 Mich. 1, 11, holding that the solicitation of contributions from a congregation assembled on Sunday for religious worship, in order to pay for a house of worship which has been erected for their occupation for religious purposes, is a work of charity, within the meaning of the statute prohibiting the doing of any manner of labor, business, or work, except only works of necessity and charity, on Sunday; and that a promise to pay a certain sum for that purpose, made in response to such solicitation, is sustainable on that ground.

3. *Attorney General v. Geerlings*, 55 Mich. 562, holding that the office of deacon is ecclesiastical, not statutory, and is controlled by the unincorporated membership of a religious association, the decision of whose tribunals upon the election thereto is final; and the fact that the deacons are authorized by statute to be *ex officio* trustees of the church on its civil incorporation makes no difference.

4. *Cicotte v. Church*, 60 Mich. 552, holding that, in a suit by a trustee of a religious society to recover pay for services rendered for the society without any express contract for compensation, it is error to exclude testimony offered by the defense tending to negative any custom on the part of the corporation to pay its trustees for services rendered by them; and it is also error to permit the plaintiff to show the individual recognition by the trustees of his right to compensation.

5. *Blomquist v. Nappa*, 80 Mich. 484, holding that where the annual meeting of a religious society for the election of trustees is adjourned by the chairman on his own motion and without right, and, pursuant to an announcement by several members, a portion of the members of the society meet on the same day, and elect trustees, who qualify and enter upon the discharge of their duties, and no other election is held, said trustees are entitled to hold their office until others, at least, who have a better title to the office, are chosen.

See *Bear v. Heasley*, 98 Mich. 279, for a very valuable discussion of questions relating to *voluntary* religious societies.

in favor of the change, and it is said that these 11 acquiesced. The six complainants have filed a bill praying that the defendants, who are the duly-elected trustees of said church, may be declared to be the trustees for complainants and the other members of said congregation who adhere to the faith of said United Presbyterian Church, and that they be restrained from conveying said property. The property involved is worth $55,000.

The property in question came to the society free from anything in the nature of an express trust. It was purchased, and an ordinary deed conveyed the fee. Hence, questions based upon a conveyance expressing a trust may be eliminated. Neither is it the case of property belonging to a voluntary society, the obligations and rights of the members of which are to be measured by their articles of association or constitution. The theory upon which complainants base their claim is that the trustees of the society hold the property in trust for the religious purposes connected with the denomination mentioned, from which it cannot be legitimately or lawfully diverted. Some cases will be found which support the contention of complainants, viz., that, where property is held by a religious corporation, it is a trust fund, which must be applied to, and not diverted from, the support of the particular religious sect with which it is connected. In some of these cases the corporations appear to be such through special charters; some are, perhaps, organized under general laws which may differ materially from that of Michigan. But we do not find it necessary to discuss these cases; they will be found in the briefs of counsel, Pennsylvania, perhaps, going the furthest in support of the proposition.[1]

---

[1] Counsel cited: *Means v. Church*, 3 Watts & S. 303; *Winebrenner v. Colder*, 43 Penn. St. 244; *Schnorr's Appeal*, 67 Id. 138; *Roshi's Appeal*, 69 Id. 462; *Sutter v. Church*, 42 Id. 503; *McBride v. Porter*, 17 Iowa, 203; *Church v. Society*, 23 Id. 567; *Harmon v. Dreher*, 1 Speers, Eq. 90; *Wiswell v. Church*, 14 Ohio St. 31; *Watson v. Jones*, 13 Wall. 679.

The courts of New York, on the other hand, in several well-considered cases, have asserted a contrary doctrine; holding that the society is a corporation, civil in its nature, endowed with the power of managing its affairs according to the will of the majority, as it is usual for corporations to do, and that while, on the one hand, the spiritual affairs of the members cannot be controlled or participated in by the society, on the other hand the temporal affairs are beyond the reach of the spiritual body. The communicants are frequently members of the society, and as such exercise a potent influence upon its policy, and one of the present provisions of the law requires a majority of the trustees to be communicants of the spiritual body connected with the society. This is not necessarily a recognition of complainants' theory, but is a safeguard against action by the trustees tending to estrangement or embarrassment of the members of either body. The cases mentioned recognize the power of the corporation to make changes, and deny the application of the doctrine that each member of the society has a right to require the use of the property of the society for the benefit of, or in conformity to the principles of, some general religious body, to which such society may at some time in the course of its corporate life have seen fit to conform its worship. *Burrel v. Church*, 44 Barb. 282; *Robertson v. Bullions*, 11 N. Y. 243; *Gram v. Society*, 36 Id. 161; *Watkins v. Wilcox*, 66 Id. 654; *Petty v. Tooker*, 21 Id. 267; *Smith v. Nelson*, 18 Vt. 511; *Bascom v. Albertson*, 34 N. Y. 584. See, also, *Calkins v. Cheney*, 92 Ill. 463; *McBride v. Porter*, 17 Iowa, 203.

It is true that this question is affected by, and depends upon, the statute under which the society is organized, and that such statutes differ. Our statute is similar to that of New York. The law (Comp. Laws 1857, p. 660) under which these articles of association were made per-

mits any five persons of full age to form themselves into a church, congregation, or religious society. Section 2010. It will be noticed that the act is silent upon the subject of faith or denomination, and we are left to infer that these are subject to the will of the church, congregation, or society when formed. Having subscribed articles, they may elect trustees to take charge of the property belonging to, and transact the affairs relative to the temporalities of, such church, congregation, or society. The act assumes, rather than provides, that connected with this church, congregation, or society will be some sort of religious exercises, —perhaps it may be said a religious and denominational organization. What they shall be must rest with those who sign the articles, and such as from time to time become contributors to, or stated worshipers with, *the society*. See section 2011. It is observable that it is not association and worship with the denominational body that give character to the member and make him a voter, but it is the corporation or society existing under the articles to which he must contribute and with which he must worship; importing that the society, and not the denominational organization, is dominant in the eyes of the law. The latter, as such, cannot exercise any control over the affairs of the society, such as determining when and where it will erect a church edifice, or dictate the employment of clergymen or others. On the other hand, there is no attempt to subject a denominational body to the control of the society that may act with it, in matter of faith, discipline, or affiliation. As a rule, they move in harmony, because the society is composed largely of the members of the denominational body, and is indirectly controlled by it. Were it otherwise, controversies like this would probably be more frequent, as the property held by the statutory societies generally comes through the effort of the church

proper that is associated with it. Such property, however, is none the less within the control of the society.

How far the power of the society (*i. e.*, corporation) as to the disposal or use of its property is limited by the doctrine of *ultra vires*, we need not discuss, further than to say that members of the society could probably insist upon its property being applied to religious purposes, such being the object of the society. But to say that such religious purposes must be determined and limited by the views of individual members, and not by the will of the majority, is another matter. To hold that the power of this society, under the law, to choose its own method of worship, and to use its property for religious purposes in accordance with the opinions or wishes of the majority of such society (which rights it certainly had at the time of its organization), became limited by the denominational affiliations of its members through a spiritual organization formed by them, so that it was forever thereafter precluded from permitting the use of its property in any other way than that prescribed by the regulations, creed, or discipline of such organization, would be to make the power of these corporations depend, not upon the law under which they are created, but upon the opinions of those who signed the articles, or, as in this case, upon the regulations of the superior denominational body with which such spiritual organization might first chance or choose to connect itself. The members of this association, before they signed these articles, were at liberty to unite with any religious denomination they chose. The articles did not abridge this right, unless by reason of the selection of the name "First Associate Presbyterian Church of Detroit." No one would pretend that this could so operate, except as it indicated an intention to conduct its worship in conformity with a body shown by the evidence to have been in existence at the time, viz., the Associate Presbyterian Church of North

America. At that time some of the signers of the articles
may have been Presbyterians,—perhaps all were; or they
may have included members of various Presbyterian churches,
and perhaps of other denominations, and possibly some of
no particular faith. It is not uncommon, in new countries
especially, for people to bury their denominational preju-
dices and preferences, and unite in forming and supporting
a single church. Sometimes, it is the only means of obtain-
ing the privileges of religious worship, which this law
wisely encourages, and enables them satisfactorily to do.
At all events, they perfected a denominational organiza-
tion, and proceeded to recognize the jurisdiction of the
Associate Presbyterian Church of North America. Subse-
quently, they changed their allegiance to the United Pres-
byterian Church of North America, as hereinbefore stated.
The corporation had nothing to do with this, which was a
matter not within the power of the corporation to partici-
pate in. Nor could it control their action when they con-
cluded to unite with the Presbyterian Church. The record
shows that, of the communicants present, all but 11 voted
in favor of the change. During all of the time this society
continued its worship, and the denominational body with
which it has been associated has worshiped with it. Now
we are asked to compel it to cease permitting its property
to be used for worship in conjunction with those of the
communicants who recognize the Presbyterian Church, and
to devote it to the use of that portion who adhere to the
United Presbyterian Church.

The case of *Hardin v. Baptist Church*, 51 Mich. 137,
discusses this statute, wherein Mr. Justice COOLEY, speak-
ing for the Court, says:

" Persons desirous of forming themselves into a religious
society sign articles of association for the purpose, agree
upon a name, elect trustees, and put their articles on
record, when duly perfected. They thereby become a cor-
poration by the name agreed upon, and may take, hold,

and convey property, and exercise the ordinary functions of corporate bodies. The associates are not necessarily professors of any particular belief or faith, or members of any church; and corporate succession is kept up by conferring the privileges of corporators on all who regularly attend worship in the society, and contribute to its support. And the trustees, who are to manage the temporal affairs of the corporation, may or may not be church members.

"Connected with the corporation, the statute contemplates that there will be a church, though, possibly, this may not be essential. In this case there is one. The church has its members, who are supposed to hold certain beliefs, and subscribe some covenant with each other, if such is the usage of the denomination to which the church is attached. The church is not incorporated, and has nothing whatever to do with the temporalities. It does not control the property or the trustees. It can receive nobody into the society, and can expel nobody from it. On the other hand, the corporation has nothing to do with the church, except as it provides for the church wants. It cannot alter the church faith or covenant. It cannot receive members. It cannot expel members. It cannot prevent the church receiving or expelling whomsoever that body shall see fit to receive or expel."

We think this case in harmony with others cited, and conclusive of the present one. The society, by action which appears to have been regular and substantially unanimous, has acquiesced in the action of the spiritual body, and is willing to apply its property to the maintenance of religious worship in accordance with the ideas of such body, which it still permits to worship with it, disregarding the changes, if any, which such body may have made in its affiliations.

The decree of the circuit court will be affirmed, with costs.

The other Justices concurred.